We will proceed then to the next appeal. It's Waste Management Mobile Bay Environmental Center v. The City of Mobile Solid Waste Authority. And John Cowles Neiman is here for Waste Management, the appellant. And Charles Leo Miller, Jr. is here for The City of Mobile Solid Waste Authority. And Mr. Neiman, are you ready to proceed with your argument? Yes, Your Honor. You may. Thank you, Judge Wilson, and may it please the Court. My name is John Neiman. I represent Waste Management. My client and I are grateful for all the work the Court and its staff have done to make oral argument possible during this pandemic. Four and a half years ago, a federal jury found that the Mobile Solid Waste Disposal Authority breached its multi-million dollar long-term contract with Waste Management. In the years that have followed, the Authority has refused to pay or to otherwise take any steps to satisfy this federal judgment. The Authority is therefore subject to the same post-judgment remedies all defendants face when they do these sorts of things. The land at issue here, which the Authority says it will not need for its stated purpose for another 50 years, is due to be executed upon to satisfy a portion of the $5 million that remains on this federal judgment. Now, the Authority has argued it shouldn't face this consequence because of a special exemption that Alabama law grants to cities and to counties for property used for municipal or county purposes. If the Authority were right about that, then the Authority would be very close to judgment-proof, and that would be a very bad thing. The Authority would be able to continue defying this federal judgment. It would be able to continue defying this contract. In fact, in the last three weeks, another federal jury found the Authority liable to Waste Management for continuing breaches of the same provisions of the same long-term contract and awarded Waste Management another $2.8 million as a result. The Authority presumably plans to defy that federal judgment as well. This Court should head off that possibility by holding that the Authority is wrong about this Alabama law exemption for two reasons. The first is that this exemption does not apply to any of the Authority's property. The second is that this exemption, at the very least, does not apply to the specific property at issue in this case. Both those considerations are before the Court, and I'll address both in turn. Counsel, may I ask you a question? The District Court, in its order when it entered the order, it really relied on the particular Alabama section that dealt with the exemption, which is 61010, correct? Yes, Your Honor, that's correct. It found that, in essence, the property belonged to the city. Yes, Your Honor. But it didn't really make any findings as to how it belonged to the city or how it was used for county or municipal purposes. It presumed it because it belonged to the city. That's my reading of the order. Am I incorrect? Your Honor, I think that's consistent with my reading as well. My understanding, though, is that both parties concede or agree that the property does belong and is owned by the Authority. Your Honor, that's certainly Waste Management's position. I don't want to speak for Mr. Miller, but I do think that the Solid Waste Disposal Authority would concede that, number one, the city has never had its name on a deed on this property, number two, that the Authority, not the city, purchased this property initially 25 years ago, and number three, that if you would look at the deed today, the city's name does not appear on the deed. Only the Authority, which is a separate entity under Alabama law, has ownership of this property. And under the Alabama statute that deals with executions, you can only execute on real property if the defendant has legal title or perfect equity. Your Honor, that's... I'm sorry. In this case, the title belongs to the Authority. Yes, that's correct. The language that Alabama Code 61010 uses is belonging to. It is clear from context that those words belonging to in the statute mean owned by, and this land is owned by the Authority, not the city. This is Judge Wilson. The district judge made a finding of fact that the West Track Landfill property belongs to the city. Do we apply a clearly erroneous standard of review to that finding of fact? No, Judge Wilson. I do not believe that this court should apply that deferential standard of review to that finding. I do not believe it is a finding of fact. It's not a finding of fact? No, Judge Wilson. No, I don't think it is, and the reason why is that there's no dispute about the underlying facts here. I think the district court's decision is best understood as saying that as a matter of law, property that is owned by the Solid Waste Disposal Authority is, in fact, belongs to the city. That's erroneous for a number of reasons. It's contrary to the text. It's contrary to the purposes for which Alabama law establishes Solid Waste Disposal Authorities, and it makes no sense in light of the equities of this particular situation. The district court also found that the city created the authority. The city names its board of directors. Upon dissolution of the authority, the property vests with the city, and all of the authority's earnings go to the city. And you don't dispute that the property is being used for a municipal purpose. Is that right? Your only argument is that the property does not belong to the city? Your Honor, no. A couple of things. First of all, some of the premises that you mentioned earlier in terms of this property vesting in the city upon dissolution we would dispute because this property is not necessarily going to belong to the authority upon its dissolution. The authority may never dissolve, and before then, the authority has the power to sell the property. So some of those premises we disagree with, and they call for a different result than the district court reached here. But also, it's entirely within the questions before the court to conclude that this property, on the specific facts of this case, regardless of whether authority property generally is subject to execution, this particular property is not subject to the exemption. So whether the court wants to label that finding that this property isn't being used as the statute envisions, or whether the court wants to say that this is not municipal use, either way, that reasoning in and of itself provides a narrower fact-bound reason to reverse the court's judgment here. Judge Wilson, can the property be used for a non-municipal purpose? In other words, can waste management use the property for any reason that it wants to? Well, currently, Judge Wilson, the property is owned by the Solid Waste Disposal Authority. I understand that, but can it be used for any reason that it wants to? Could it put an amusement park there, if it wants to, and use it for a non-municipal purpose, and generate income from the property that will not go to the city? Judge Wilson, the Solid Waste Disposal Authority, I doubt very seriously that it could erect an amusement park. Thank you, Ms. Geddes. I doubt very seriously that the Solid Waste Disposal Authority, consistent with its charter, could erect an amusement park. But the undisputed facts here, according to the Solid Waste Disposal Authority, is that it has not needed this property. The Solid Waste Disposal Authority says it bought the property 25 years ago for possible expansion of the landfill, but the Solid Waste Disposal Authority says it has not needed it for that purpose. The facts in the record suggest that the landfill will not be expanded, if at all, for another 50 years. In these circumstances, the same precedence that the Solid Waste Disposal Authority relied upon in claiming that authorities also get the same exemptions as cities and counties, established that this kind of property that isn't being used, according to the authority, for its stated public purpose, and for which the authority has no plans to use the property for its stated public purpose, is not subject to any exemption at the very least. This is Judge LeGault. May I ask another question before your time expires? With regards to the public purpose, or using it for county or municipal purposes, under Hamrick, the Alabama Supreme Court talks about this is for purposes of the housing authority, where they have a specific provision, statute provision, that exempts them from their property from levy or sale. And so they have the same rights enjoyed as the properties, towns, and cities, and counties in Alabama. The question I have is, in that case, the Alabama Supreme Court talks about if city property is not used for a public purpose, it may be seized and sold. So in this particular case, there was property that was not being used, and it had never been used for its intended purpose. So I guess the question I have is, what is the definition or the meaning of the word used? Does it have to be, at that moment in time, actually used for county or municipal purposes, or can you have a future intended use? Is there a case that really addresses that point under Alabama law? My time is up. May I answer, Judge Wilson? Yes, you may. Judge will go absolutely, and those cases are either the very case that the authority has cited for the proposition that it gets the exemption, the Gardner case from 1917, as well as the Russell and Johnson – excuse me, the Gardner cases from 1894. The Russell and Johnson case, which the authority also relies upon, cites a case called Murphree, which was also from 1897. It involves almost the exact same facts here, that there, the city of Mobile had a tract of land that was purportedly to be used for the expansion of a city cemetery. It had not, in fact, used that property and did not have plans to use that property for that stated public purpose at that point in time, at the time of the levy, and the Alabama Supreme Court there held that, in those circumstances, the exemption should not apply. So that reasoning should apply on all fours with the facts of this case, and this court can and should resolve the case on that narrow ground. The difference here is that the West Tract, by statute, is marked for waste management, right? Judge Wilson, the West Tract is, in fact, waste management – well, the Solid Waste Disposal Authority has claimed that it is going to use the property. It has, in fact, made that claim, but it bought the property 25 years ago, and the facts suggest that the landfill is not going to need to be expanded for another 50 years. In those circumstances, basically, this property is serving the same function as a bank account, and it ought to be subject to levy just as cash in a bank account would be. Judge Wilson, may I ask another question? You may. Given that this is, it seems to me, a fairly difficult question of statutory interpretation that goes directly to the relationship of cities and the authorities that it creates, is this a question that would be better certified to the Alabama Supreme Court? Judge Pryor, I think the court could take that step, but I think it need not do so for two reasons. First of all, the facts that we have been discussing and focusing on during this argument make it sufficiently clear that whatever the rule generally is for authorities in Alabama, the exemption would not apply to this specific tracted issue here. This case does not involve a levy or an attempted execution on, for example, the landfill itself. This case involves a piece of property that on its face the authorities said it does not need and it has not needed, yet this case is easy. Counsel, this is Judge Lagoa, but for purposes of the other issue, which is the common law issue, that clearly is a question that we should certify to the Alabama Supreme Court because there are no cases on common law, on the issue of common law with regards to this particular tract of land. Judge Lagoa, I agree with the question of first impressions. We think that the text of the statute, the purposes of the common law, and the equities all point in the same direction here, and this court under Erie can in fact resolve the question. I do think that the broader question of whether authorities ever get the exemption though is one where the law has not directly addressed the point and otherwise would be a decent candidate for certification should the court want to take that tact. But I think that the specific facts of this case make this issue and the appropriate resolution of the post-judgment motion here so clear that the court can resolve this case on that fact-specific narrow ground and leave for another day if it wishes the broader statutory and common law question of whether the exemption ever applies to an authority. Thank you, Mr. Nieman. We will now hear from Mr. Miller on behalf of the authority. May it please the court, my name is Chuck Miller and I represent the Solid Waste Disposal Authority of the City of Mobile. I want to make three points as to why Judge DuBose's ruling was correct in this matter, but before I get to those points, I want to correct a few statements that Mr. Nieman made relating to the facts in this case. First of all, the authority has not refused to pay the judgment in this case. Waste management is offsetting royalties in this case based upon the gross revenues of the landfill. Those royalties are substantial and waste management is collecting its judgment in that regard. With respect to the use of the property, there is nothing in the record that states that the property will not need to be used for 50 years. The property is held by the authority as a solid waste landfill facility. It can only be used for that purpose. Contrary to what Mr. Nieman says, the authority does not have the power to sell property that it holds for a solid waste landfill. That's why the remainder of the city and the property which vest upon the dissolution of the authority was so important to the district court that the district court noted that the public use of the property was tied in. But let me ask you a question. This is Judge Lagoa. With regards to the Murphy case, because in the Murphy case that dealt with property that was owned by the city and it dealt with attractive land that the city claimed was going to be used for purposes of a cemetery, but in fact had never been used for purposes of a cemetery for 25 or so years. And the Alabama Supreme Court said that because it was not being used and there were no plans to use it, therefore it was not exempt and it could be executed on. So why is that not the same here? Okay. Well, first of all, Your Honor, if you read the Murphy case, you have to read that in response to the town of Oneonta case, which is the Russell and Johnson case. And that case on page 66 talks about the fact that the exemption statute should be liberally construed and that the burden is on the party trying to execute on the property to prove that that property, the subject of the execution is not public use property. Well, but the Murphy case says that the question is whether under the statute the property was exempt at the time of the levy of the execution. So when they went to levy the property at issue here, West Trackland, was it being used for purposes of waste disposal? It was being held for purposes of waste disposal. Being held is different because under the Murphy case, it clearly shows that just because it's being held does not mean under the Alabama Supreme Court ruling that it was being used and therefore it was exempt. But again, maybe this is a question that we should certify to the Alabama Supreme Court. Your Honor, we have no objection to certifying that question to the Alabama Supreme Court. But in answer to your question, this execution resulted from a state court trespass action and conversion case, which was removed to Judge DuBose's docket and has since been remanded. And the basis of that case was that Waste Management was using the West Track to support its operations on the landfill. It was converting cover dirt. It had built retention ponds. It had permitted with ADEM stormwater permits on the West Track for the stormwater runoff. So that was the subject of that lawsuit because they were doing that without compensating the Solid Waste Authority. So the facts will show, if we get to that, that that property was being used for landfill purposes. With respect to the Murphy case, though, on those cemetery plots, the question that turned on that case was the fact that the city never held that property for public use until after execution was attempted. Before that time, if you look at that case, the city had maps drawn. They had fences put around certain cemetery plots. And the plot, the piece of land that was subject to execution was outside of that and was never represented to be part of the cemetery. That's not the facts in this case. Before the district court, there were minutes of public authority meetings where Waste Management appeared at those meetings and at one point stated that it might be a good idea to include the West Track in the Solid Waste Permit and then later came back and said at the time that they didn't need that. Those were the facts that the court had before it. The Waste Management did not offer any facts and really in the district court did not dispute the public use of the property. All Waste Management argued was that the fact that the authority was a public corporation, that its property did not belong to the city. And the court looked at the statute and the public intent of the statute in 1189A-1 as well as the Solid Waste Act and noted that the only purpose of the Solid Waste Authority was to serve the public interest and the health and safety of the citizens. And that was the basis of her public use argument. This is Judge Wilson now and I'm trying to figure out an answer to this question. Does the authority have the power to sell the West Track and sell away whatever interest the city has? No, sir. It does not have that power. 1189A-8 does not give the authority the power to sell sanitary landfill property. The authority can only have two types of facilities. Landfill disposal facilities and reclamation or recycle facilities. The statute does give the authority the power to sell recycle facilities but not sanitary landfill facilities. Now Waste Management will argue, well, there's a catch-all that says that the authority has the power to do any and all things necessary or convenient to carry out its purposes and to exercise its powers. But the power to sell the landfill facility property is not a power that was granted by the legislature. And it makes sense because the legislature would not want an authority to sell landfills. I mean the whole purpose of the Solid Waste Act and the Solid Waste Authority Act is to control where garbage goes for the public's health and safety. And that's what the court noted in footnote 15 of her order, of Judge DuBose's order. Waste Management has only tried to make distinction, well, Hamrick 1 confirms that the public purpose or use of the property is what controls the exemption. And that's what Judge DuBose relied upon. Judge DuBose also found that the authority, the term belonging to means more than just ownership. It means connected with and we stated that in our brief. And in this case, the connections, Judge Wilson, as you pointed out, with net profits of the authority going to the city, with the city controlling the members of the authority, with the control over amendments to the articles of incorporation of the authority, and with respect to the vested remainder in the interest, all show that the authority is connected to the city. Even waste management's own practices with respect to royalties and payments, it has dealt directly with the city and not with the Solid Waste Authority. The city is so connected with the Solid Waste Authority that it's hard to even separate the two. The only reason that they were ever separated was for bonding. Mr. Miller, can you hear me? Yes, Judge. Can you hear me? Yes. Yes. Under Section 1181A.a.10, does the authority have the power to mortgage property like the West Track? The authority can only mortgage the property in connection with a bond issue. And if you look in Section 1189A.10-9, it states that any remedies with respect to those mortgages, that all those remedies shall not be inconsistent with the general laws of the state of Alabama or the provisions of this chapter. If the authority assumes any obligations relating to bonds, the original obligors are never relieved. The only protections there would be two bondholders, not two judgment creditors. I might submit to the court that this court would want to be deferential to Judge DuBose on the general principle that this case involves the execution of a trial judgment, and specifically here because the property is subject to public control and the public use is at stake. This is not a mere private dispute. Judge DuBose should have the discretion to conclude that the public use is intended for the West Track. It seems undisputed that public use of the property is meant to be exempt. Determining when there is too much property in reserve for future use so as to lose the sense of being actually committed to public use seems a matter of discretion for the trial judge. This is Jill. Sorry, Mr. Miller. This is Jill Pryor again. Wasn't the whole purpose of creating public corporations like the authority so that they could enter into contracts like this one with waste management? And I'm concerned that if we were to hold that the parties, when they contract, couldn't execute judgments for debt owed on that contract, wouldn't that defeat a key part of the purpose of the public corporation? Well, the public corporation in this case, Your Honor, one of the purposes was to enter into long-term contracts, but the parties to that contract are not left without a remedy. They can certainly file mandamus against the chairman to recover any royalties or revenues of the solid waste authority. What we're protecting here is the property that is held by the authority for the public use of a sanitary landfill. Waste management is a sophisticated company. It deals in waste and deals with municipal authorities and cities and counties all over the country. It well knows what's at stake when it enters into these contracts and what its remedies are. Counsel, this is Judge Legault. May I ask you a question, though, because that leads me to this question, which is, yes, you're a sophisticated, in essence, a sophisticated company, and you have contracts that you enter into. But for purposes of the housing authority, which I know is a different statute, but obviously the legislature in that case specifically exempted property of the housing authority from execution, exempted it from levy and sale by virtue of execution. If the Alabama legislature wanted to do that, why wouldn't they have done that for purposes of the authority at issue here? Because it didn't need to. In the housing authority statute, the housing authority was given specific powers to mortgage property, and that was in Section 24-1-35. And those were public mortgages or mortgages that the public participated in with private lenders. Obviously, housing authorities are going to involve more properties, not just regulated landfills. And all that 24-1-40 did was just bolster the common law exemption. That's what the Hamrick decision noted. And in its case, when it looked at the public use, that the common law public use prevailed to protect that property. It was only bolstered by that provision in the Housing Act. As I said, the Housing Act, it's our reading and we argued that the only reason that that was put in was because of the fact that the public mortgages were accepted. In other words, those could be foreclosed upon, and the legislature just wanted to make sure that all of the common law exemptions were still intact. It's redundant, really, is what it is. So if the city decided, this is Judge Wilson, so if the city decided to dissolve the authority, what would happen to the West Tract? It would vest in the city. And there is no question that the statute says it shall vest in the city. You begin your argument by stating that the authority is paying off the judgment. It's a $6 million judgment, and only $725,000 of the judgment has been paid. Were you suggesting that the $6 million judgment is going to be paid by the authority? That $6 million judgment will be offset by the authority. There's a case in state court where the authority has a claim for indemnity against another waste management affiliate, WasteAway Group, for $1.7 million of that judgment. There are also issues with respect to the royalty offset. Counsel, your time has expired. May I continue, Your Honor? You may. There are facts, Your Honor, where the royalty that is offset has been underestimated by 75% based on the fact that the royalty is based on gross revenues of the landfill, and waste management is in charge of the gross revenues of the landfill. What the city puts in the landfill only accounts for 25% of the total waste volumes that go into that landfill. The other 75% come from industries and other communities. The royalty should be based on the full gross revenues, and there are issues as to whether that number, which is in the control of waste management, is the true number. The facts suggest otherwise. All right. All right. Thank you, Mr. Miller. Thank you, Your Honor. And, Mr. Neiman, I believe you've reserved some time for rebuttal. Thank you, Judge Wilson. It seemed to me that almost all the discussion during Mr. Miller's response focused on this broader question, a first impression under Alabama law whether authorities ever get to claim the exemption. Very little was said about the very fact-specific, fact-bound ground on which this court can resolve this case under the Murphree decision from 1897, given that the authority's allegations when it claimed this exemption was that it had purchased this land, that it had not needed the land for its stated purpose, and that it would not need the land for the stated purpose of landfill expansion. The authority didn't allege specifically that they would not need the land for landfill expansion for the next 50 years, but the evidence at trial cited in our opening brief shows that testimony of experts was that the landfill would not be expanded for 50 years. In these limited factual circumstances under Murphree, the authority, even if it otherwise could claim shelter under 61010 with respect to its landfill, for example, it cannot claim to shelter this particular piece of property for exemption at all. This is Judge Wilson. What we have here is that the authority has put forward a reasonable justification for not using the property to date because this dump is not at capacity, and when it reaches capacity, the authority will begin using the West Tract. That's what makes it different from Murphree versus the City of Mobile. Judge Wilson, I do think there are some distinctions from Murphree in the sense that the authority has said ahead of time that it plans to use this property for landfill expansion, but given the amount of time that the record establishes will pass before any expansion could ever be needed, Murphree ought to be on all fours here. So much of the authority's argument here is about the public interest. The authority says that the public interest in efficient waste disposal requires it to be exempt, but that analysis makes no sense as to this particular property. The authority purchased this property in 1994. It generated the money to do so. You don't even dispute that the West Tract will be used for a municipal purpose. Judge Wilson, at this point in time, we don't know whether the West Tract will ever be used for that purpose. It has been held for 25 years, and the trial testimony suggested that the Chastang landfill will not fill, will not become full for another 50 years in these circumstances, where there is a $5 million judgment still outstanding, despite the limited royalties that my client has been able to withhold. The public interest favors... You're disputing that the West Tract is not going to be used for a municipal purpose. It's going to be used as a landfill. Judge Wilson... To dump the garbage of the residents of the city. Judge Wilson, I certainly don't dispute that the authority has alleged, in response to the writ of execution, that it intends to use this property for landfill expansion at some point in the future. My point is that... That's the business of waste management, to dispose of the city's garbage, the residents' garbage. That's what the authority was created for. And that's what the landfill is going to be used, the West Tract is going to be used for. And you don't seem to dispute that. Judge Wilson, I do dispute that we can know what will be done with this West Tract in 50 years, if and when the Chastang landfill ever fills up. So I don't think we can conclude with any certainty that this land will ever be put to the stated purpose that the authority claims it will be. In these circumstances, I mean, if the rule is otherwise, then the authority can simply put its money into various pieces of property, claim that they're going to be designated for public use at some point in the indeterminate future, and defy federal judgments, defy its contractual obligations in perpetuity. And as Judge Pryor's question suggested, if the public interest is really what the law is keyed in on here, then the public interest... It seems unfair, but don't you assume the risk when you contract with the government, that if there's a breach of contract, you might not fully recover? Judge Wilson... You assume the risk when you contract with the city that you might not fully recover. Judge Wilson, I'm out of... It's not like a breach of contract between two private parties. Judge Wilson, I'm out of time, but I'd like to respond if I can. You may. And you do have another remedy. Why can't you seek a writ of mandamus and force the city to sell bonds and turn over surplus funds? Okay, so in response to your first question, I thought Judge Lagoa's question during Mr. Miller's argument was critical. My client did not assume the risk that this property would be exempt when it assumed this contract with the authority because Alabama law did not state that the authority would be exempt. The only statute that applies to authorities that says authorities get the exemption is the housing authority exemption. That statute establishes a clear rule for contracting parties that if they contract with housing authorities, the exemption isn't going to apply. That's critical because there is no such statute as the solid waste disposal authorities, and my client did not have that warning. As to alternative remedies, Judge Wilson, I think the alternative remedy here is far from clear. When someone contracts with the city and is aware that the city will be able to claim the exemption, that rule makes sense to a certain degree because that mandamus remedy is available, and the city will have a general fund, and the city has the power to tax. The authority here has neither a general fund or the power to tax, and you've suggested perhaps a remedy here would be that my client could sue the authority for and require the authority to issue bonds to cover this judgment. I know of no Alabama case specifically saying that mandamus is an appropriate vehicle to force an authority or any other entity to go through the complex process of issuing bonds, but ultimately if that's a possibility, then it points to what the authority's solution here should have been. When the authority was faced with this judgment, it should have raised funds in whatever way was appropriate to allow it to avoid execution on the property that it had designated for public use. It should have issued bonds. It should have taken out a loan. There are many other things it could have done. The keys were basically in its pocket, and the problem here is that the authority has refused – You can finish your answer. The problem here, the authority has the tools. The problem is that the authority has refused to use those tools. In these circumstances, equity and law point decidedly towards allowing execution on this property that the authority does not claim that it's going to need for its stated purpose. Thank you. All right. Thank you, Mr. Neiman and Mr. Miller. And that concludes our docket for today, and this court will be in recess until 9 o'clock tomorrow morning. Thank you, everyone. Thank you. Thank you.